BARTON *v.* SOUTHERN RAILWAY CO., and *vice versa.*

1. The blow-post law as embodied in the Civil Code, §2222, has no application where the track of the railroad company crosses the public highway upon a bridge or trestle above the latter.
2. A railroad company, whose road passes over a highway by a bridge, is not liable to a traveler in the highway for an injury caused by the fright of his team, occasioned by the running of a train in the usual and customary manner, and without unnecessary or unusual noises, although the approach of the train to the overhead bridge was not signaled, and the topography of the country was such that accidents of a similar character were peculiarly liable to happen.

Argued February 5,—Decided June 26, 1909.

Action for damages. Before Judge Wright. Floyd superior court. August 5, 1908.

Barton brought his action against the Southern Railway Company. The defendant filed a general demurrer, which was overruled. After the plaintiff had presented his evidence and closed, the court sustained a motion for nonsuit. Both of the parties excepted. The substantial averments of the petition are as follows: The defendant's line of railway crossed the Rome and Summerville public road at a point in the city of Rome about a mile from the court-house, upon a trestle about twelve or fifteen feet above the bed of the public road. The public road at this point is in a depression between two hills, and the railroad approaches the trestle from both directions around a curve at the base of these hills, so that it is shut off from the view of one going along the public road in a direction away from Rome until he has arrived at the trestle; and for this reason it is impossible for one approaching the trestle from the direction of Rome to see, and difficult to hear, the approach of a train coming in either direction to this crossing. This public road was a frequented highway, where people traveling with vehicles and teams were almost constantly passing throughout the day, and frequently during the night. The running of a train over this trestle was at all times calculated to excite, frighten, and cause to run away ordinary road-worthy teams, and especially those that were nervous or easily frightened, when such teams were passing under this trestle, and in this way the running of a train over this trestle brought peril to every person driving a team under or near this trestle. All these facts and conditions were well known to the defendant, its

servants and agents operating its trains. About five o'clock in the afternoon of August 13, 1907, plaintiff was approaching this trestle as he was leaving Rome for his home, driving two mules to an empty lumber wagon. As he approached this trestle he listened to ascertain if any train might be approaching from either direction, and, hearing none, drove forward under the trestle; and just as he was passing under the trestle a train of the defendant came around the hill from the direction of Gadsden, passed over the trestle and immediately over him and his team, at a high rate of speed, and by its terrifying appearance, rapid motion, and tremendous noise it greatly excited and terrified the team which he was driving, which, becoming wild from fright, ran away and injured petitioner in spite of his efforts to control them. The servants in charge of defendant's train failed to blow the whistle or otherwise warn the plaintiff, or to check the train, at a point four hundred yards from the crossing, or at any point nearer than four hundred yards, as required by statute. Under the facts and conditions stated, the defendant owed all persons traveling this road, when one of its trains was approaching the crossing, the duty of warning them of such approach, in the exercise of ordinary care; but, disregarding this duty, the defendant entirely failed to warn plaintiff of the approach of its train, but ran its train at a high rate of speed, which itself naturally tended to frighten and did frighten plaintiff's team. After alleging that plaintiff was without fault, his injuries are minutely described, and the amount of damages alleged.

    *C. E. Davis* and *W. M. Henry,* for plaintiff.

    *Maddox, McCamy & Shumate* and *George A. H. Harris & Son,* for defendant.

    EVANS, P. J. 1. The first ground of negligence alleged is the failure on the part of the servants of defendant in charge of the train to observe the blow-post law, as embodied in the Civil Code, §2222. In the case of *McElroy* v. *Georgia, C. & N. Ry. Co.,* 98 *Ga.* 257 (25 S. E. 439), it was held that this section of the code had no application "where the track of the railway company crossed the public highway upon a bridge or trestle above the latter." This ruling was by a divided court, and the plaintiff asks us to review and overrule the ruling there made. We are satisfied that the decision of the majority in that case was correct, and adhere to the ruling made by them

2. But it is also alleged and contended, that, independently of the statutory duty imposed by the Civil Code, §2222, the obvious danger to the constantly passing public along this much traveled. highway, of passing trains frightening horses, and the circumstances of the situation which prevented the public from observing the approach of a train unless heralded by whistle or other signal, raised a duty upon the railroad company, in the exercise of ordinary care, to warn the public by proper signals of the approach of a train to this place of constant and obvious danger. The negligence charged against the railroad company is not that the train was run at an unusual rate of speed, or operated in such a manner as to produce unusual or unnecessary noises, or that the railroad company was negligent in constructing its track. The defendant's negligence is alleged to consist in running its train, without a signal or other precaution, over a trestle which spanned a much-traveled highway, and which from the configuration of the ground prevents a traveler driving a team on such highway, on approaching the passageway under the trestle, from seeing or hearing the train as he nears the span over the highway. There can be no doubt that the passing of a railroad above or beneath a highway, instead of at grade crossing, reduces the chances of injury to travelers along the highway by the running of the train. Such crossings are to be encouraged in order to secure the safety of travel against the perils of a grade crossing. The difference between these two kinds of crossings is so radical that it does not stand to reason that the law will hold a railroad company to the same exactness of responsibility in each case. At grade crossings the traveler on the highway and the railroad company enjoy a common privilege on the highway itself, and each must use such privilege with due regard to the safety and rights of the other. This obligation requires the railroad company, in approaching a grade crossing, even in the absence of a positive statute to that effect, to exercise proper precautions to prevent injury to a traveler on the crossing, or who is about to cross, or who has just crossed. Where a railroad track crosses a highway on a trestle or bridge, it does not share with the traveler in the common use of the highway below. We can see no difference between the basal elements of liability of a railroad company incurred by its train frightening horses of travelers on highways parallel to its track,

and in passing across an overhead bridge. A railroad company has the right to make all the noises incident to the movement and working of its engines and cars, and to give the usual and proper signals of danger, and will not be liable for injuries occasioned by horses driven upon a parallel highway taking fright at such noises, if it exercises such right in a lawful and reasonable manner. However, a railroad company is under the duty to so operate its cars as not unnecessarily to interfere with the rights of individuals traveling upon the highway, or to endanger such travel by unnecessary noises tending to frighten horses. *Ga. R. Co.* v. *Carr,* 73 *Ga.* 557. The plaintiff attempts from the pleaded facts to raise a duty on the railroad company to warn a highway traveler of the approach of a train to the trestle over the highway, arising out of the special environments of the situation. In other words, it is admitted that the railroad company was running its train at a proper speed without unnecessary noises over a track, against the proper construction of which nothing is averred, and its liability for frightening the plaintiff's horses is based solely on a failure to signal the approach of the train to the crossing. The railroad company is under no duty to warn travelers on a parallel highway that it intends to use its track (*Ga. R. Co.* v. *Carr,* supra) ; and for the same reason it is under no duty to give notice to travelers using a highway over which its track is constructed that it intends to use its bridge which spans the highway. The law permits a railroad company to use its roadbed and bridges by running its trains over them in a manner customary and usual with railroad trains. If it runs its trains at a proper speed, and with no unusual or unnecessary noises, it is not liable for an injury which a traveler receives from a horse frightened by a train in passing over an overhead bridge. *Favor* v. *Boston & L. R. Corp.,* 114 Mass. 350 (19 Am. R. 364). The defendant's demurrer should have been sustained. Since the question made in the cross-bill of exceptions is controlling upon the case as a whole, and the judgment therein is reversed, there is no necessity for considering the errors alleged in the main bill of exceptions. *Gay* v. *Gay,* 108 *Ga.* 739 (32 S. E. 846).

*Judgment reversed on the cross-bill of exceptions. Main bill of exceptions dismissed. All the Justices concur.*